[No. 50335-4.   En Banc.   August 2, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS C. STAEHELI, *Petitioner.*

*Abbey & Jaffe,* by *Mark Jaffe,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Susan P. Jensen, Assistant,* for respondent.

DIMMICK, J.—Petitioner Staeheli challenges the revocation of his driver's license by the Department of Licensing pursuant to RCW 46.20.308, the implied consent law, for his refusal to take a Breathalyzer test. The issue raised is whether a person arrested for driving while under the influence of intoxicants, and who is given both *Miranda* warnings and implied consent warnings, may lawfully refuse the Breathalyzer test by insisting on the arrival of counsel before submitting to the test. We answer no and affirm the license revocation.

At approximately 11:30 p.m. on September 25, 1981, petitioner was found asleep in his vehicle in a weigh station area just off Interstate 5. The vehicle was facing northbound in the southbound lanes exiting the freeway. The car lights were on and the engine was running.

The investigating officer roused petitioner with extreme difficulty. As he did so, he noticed the odor of intoxicants in the vehicle. Petitioner appeared unable or unwilling to comply with directions given by the officer. He was therefore arrested for physical control of a motor vehicle while under the influence of intoxicants and transported to the

sheriff's office. Field sobriety tests were not performed.

Petitioner was given *Miranda* warnings upon arrival at the sheriff's office, at approximately 12:17 a.m. He then told the officer he wished to call his attorney. He first telephoned his wife to obtain the phone number. Following that call, he told the officer he no longer wished to contact his attorney. But when the officer asked him to sign the form to indicate that *Miranda* warnings had been read to him, petitioner refused, stating that he would not sign anything until his attorney arrived.

Following this refusal to sign the form, the officer read petitioner the implied consent warnings required by statute at approximately 12:32 a.m. The warnings indicated that petitioner was being asked to submit to a Breathalyzer test to determine the alcohol content of his blood; that he had the right to refuse the test, but that refusal would result in revocation of his privilege to drive; that he had the right to an additional test of his own choosing. As before, petitioner refused to sign the acknowledgment on the form. The officer also asked petitioner if he would take the Breathalyzer test. Petitioner told the officer that he would not, until his attorney came.

Apparently following this exchange, another attempt was made to contact his attorney. This attempt was also unsuccessful. Petitioner was then asked, approximately one–half hour after the first request, if he would take the Breathalyzer test. He refused again, and the officer prepared a report of refusal to submit to the test. No test was ever given.

Petitioner's license was revoked by the Department for 6 months. He petitioned for review to the superior court. At the hearing, petitioner raised a confusion defense, suggesting that he was relying on his *Miranda* rights when he insisted on waiting for his attorney. Petitioner testified that he remembered very little about events that night, except "something about tak[ing] the Breathalyzer test, and all I can remember is I wanted to contact a lawyer, because I didn't know what to do." The officer testified that he made

no attempt to explain petitioner's rights to him other than reading the rights from the forms. He also indicated that petitioner did not appear confused and that his attitude fluctuated between being mad and being cooperative.

The trial court affirmed the Department's action, finding that petitioner had been advised of his rights under the implied consent statute, and that he had refused to take the Breathalyzer test. In its oral opinion, the trial court found that petitioner was not confused regarding his rights or the consequences of his refusal to take the test. The court stated that petitioner had not indicated to the officer that he was confused about his rights, and there was no rational basis for believing that his lawyer was on the way to the station. In the court's words, petitioner's action was "a nice dodge to refuse the breath test."

In an unpublished per curiam opinion, the Court of Appeals upheld the trial court's finding on the grounds that petitioner had not met the burden of demonstrating that he was confused regarding the relationship of his *Miranda* rights and implied consent rights. We granted this petition to consider the confusion doctrine's place in the scheme of the implied consent law.

The implied consent statute, RCW 46.20.308(1), provides in part:

> Any person who operates a motor vehicle upon the public highways of this state is deemed to have given consent . . . to a chemical test . . . for the purpose of determining the alcoholic content of his . . . blood . . .
>
> . . . [The officer conducting the test] shall inform the person of [the] right to refuse the test . . . [and] shall warn the driver that [the] privilege to drive will be revoked or denied if he or she refuses to submit to the test.

Under the statute, a license cannot be revoked unless the driver has been asked to submit to the test and refuses. If the officer fails to give the driver the required warnings, there is no opportunity to withdraw consent and thus no refusal. *See Schoultz v. Department of Motor Vehicles,* 89 Wn.2d 664, 668, 574 P.2d 1167 (1978); *State v. Parker,* 16

Wn. App. 632, 634, 558 P.2d 1361 (1976). Similarly, if the warnings confuse the driver about his rights under the statute, he may claim that he had no reasonable opportunity to refuse. *See, e.g., Strand v. Department of Motor Vehicles,* 8 Wn. App. 877, 509 P.2d 999 (1973). A confusion defense is not established, however, by showing that the person's intoxication made him incapable of understanding his rights and responding to the officer's request. *Department of Motor Vehicles v. McElwain,* 80 Wn.2d 624, 496 P.2d 963 (1972).

■ The confusion doctrine's most troublesome aspect relates to the interplay between the implied consent statute and *Miranda* warnings given to a criminal suspect. A driver arrested for driving while intoxicated must be given *Miranda* warnings. *State ex rel. Juckett v. Evergreen Dist. Court,* 100 Wn.2d 824, 675 P.2d 599 (1984). The *Miranda* warnings inform an arrestee of his right to counsel prior to any police interrogation. They also serve to implement an accused's right of access to counsel required under court rules. *See State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893, *vacated,* 449 U.S. 977 (1980); JCrR 2.11. A driver arrested on a criminal charge who is asked to take the Breathalyzer test will be given a reasonable opportunity to contact counsel before taking the test. The driver therefore may claim that he should be allowed to condition a refusal on actual consultation with an attorney. We disagree.

Whatever the impact of the right to counsel in the criminal proceeding, this right cannot alter the driver's statutory obligations under the implied consent law. Consent to a chemical test is implied from being granted driving privileges, upon condition that an opportunity to withdraw consent will be given. The Legislature clearly intended that withdrawing consent would automatically incur revocation of the driving privilege. There is no place in this statutory scheme for a driver to avoid the consequences of refusing to take the test by insisting on waiting for an attorney.

For several reasons then, we reject petitioner's confusion defense. Principally, we find that, while an accused must be

provided reasonable access to counsel, there is no right to have an attorney physically present during the chemical testing. For the purposes of the Breathalyzer test, an accused's opportunity to contact an attorney must be limited to a reasonable period of time. An extended delay may significantly affect the test results. If an accused has been allowed reasonable access and has made no contact with counsel, but the test can no longer be delayed, the driver must decide on his own whether he will submit to the test.

Moreover, we believe the confusion doctrine places an unnecessary burden on law enforcement officials in dealing with intoxicated suspects. The officer cannot be expected to determine whether the motive underlying a refusal to take the test "until my attorney arrives" is based on misunderstanding the right to counsel or is simply intended to delay the test indefinitely. If, in the officer's view, the circumstances appear to warrant further explanation, the officer will be permitted to tell the driver that the test may no longer be delayed and the decision to submit must be made without the presence and/or advice of counsel. But in any case, the statutory warnings clearly state the consequences of refusing to take the test. Once informed that refusal to submit to the test results in license revocation, the driver has an adequate opportunity to make the required choice.

We recognize but decline to follow the confusion doctrine rule developed in other jurisdictions which, in effect, presumes confusion from the driver's insistence upon counsel after *Miranda* warnings have been given. *See, e.g., Graham v. State,* 633 P.2d 211 (Alaska 1981); *State v. Severino,* 56 Hawaii 378, 537 P.2d 1187 (1975). We agree with the New Jersey court that under the implied consent statute, "[t]he occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request." *State v. Pandoli,* 109 N.J. Super. 1, 4, 262 A.2d 41 (1970) (per curiam). *Accord, State v. Corrado,* 184 N.J. Super. 561, 446 A.2d 1229 (1982) (per curiam); *Commonwealth v. Korchak,* 74 Pa. Commw. 465, 459 A.2d 1295 (1983). *See also Du Pree v. Foschio,* 89 A.D.2d 800, 453 N.Y.S.2d 477

(1982).

Petitioner was given *Miranda* warnings informing him of his right to counsel, and was allowed the opportunity to contact his attorney. He was then asked to submit to the Breathalyzer test. He refused after being told that refusal would result in license revocation. His refusal is not exempt from penalty because he insisted upon waiting for counsel before submitting to the test.

The revocation of petitioner's driving privilege is affirmed.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM and HAMILTON, JJ. Pro Tem., concur.