[No. 13272-2-III.    Division Three.    June 7, 1994.]

THE STATE OF WASHINGTON, *Petitioner*, v. OSCAR C. TREVINO, *Respondent*.

*Donald C. Brockett, Prosecuting Attorney,* and *Larry D. Steinmetz, Deputy,* for petitioner.

*Walter v. Waltz,* for respondent.

SWEENEY, A.C.J. — The State of Washington appeals suppression of evidence of a mouth examination given before the suspect was read his *Miranda*[1] rights in the course of a BAC Verifier DataMaster breath test. The State contends (1) the CrRLJ 3.1[2] right to counsel does not attach before an officer asks to look or looks into a suspect's mouth for purposes of a driving while under the influence of alcohol (DWI) investiga-

---

[1]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[2]Relevant provisions of CrRLJ 3.1 include:

**"RIGHT TO AND ASSIGNMENT OF LAWYER**

"(a) **Types of Proceedings.** The right to a lawyer shall extend to all criminal proceedings for offenses punishable by loss of liberty regardless of their denomination as felonies, misdemeanors, or otherwise.

tion; and (2) a DWI suspect must show actual prejudice to establish a violation of his right to a lawyer. We affirm.

## FACTS

On January 1, 1992, just after midnight, Deputy Randy Strzelecki observed a vehicle weaving on East Sprague in Spokane. Deputy Strzelecki stopped the vehicle and asked its driver, Oscar C. Trevino, to perform standard field tests for DWI investigation. Concluding that Mr. Trevino had failed the field tests, Deputy Strzelecki arrested him and drove him to the Public Safety Building to perform a BAC Verifier DataMaster breath test.

At 1:02 a.m. the deputy asked to check and then checked Mr. Trevino's mouth to begin the 15-minute observation period required byWAC 448-13-040[3] for a breath test. At 1:05 a.m. the deputy read Mr. Trevino his *Miranda* warnings and at 1:09 a.m. he gave Mr. Trevino his implied consent warnings.[4] Mr. Trevino stated he understood both warnings and

---

"(b) **Stage of Proceedings.**

"(1) The right to a lawyer shall accrue as soon as feasible after the defendant has been arrested, appears before a committing magistrate, or is formally charged, whichever occurs earliest.

"(2) A lawyer shall be provided at every critical stage of the proceedings.

"(c) **Explaining the Availability of a Lawyer.**

"(1) When a person has been arrested he or she shall as soon as practicable be advised of the right to a lawyer. Such advice shall be made in words easily understood, and it shall be stated expressly that a person who is unable to pay a lawyer is entitled to have one provided without charge."

[3]WAC 448-13-040provides in pertinent part:

"The following method for performing a breath test is approved by the state toxicologist pursuant to WAC 448-13-130 and includes the following safeguards to be observed by the operator prior to the test being performed. It must be determined that: (1) The person does not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test; and (2) the subject does not have any foreign substances, not to include dental work, fixed or removable, in his or her mouth at the beginning of the fifteen minute observation period. Such determination shall be made by either an examination of the mouth or a denial by the person that he or she has any foreign substances in [the] mouth. . . . A refusal to provide a valid breath sample at any point during the test will constitute a refusal." Statutory authority for WAC 448-13-040 is contained in RCW 46.61.506.

[4]RCW 46.20.308(1) provides that any person who operates a vehicle in the state is deemed to have given consent to tests of his or her breath or blood in order to

signed an affidavit to that effect. After consulting with an attorney, he submitted to two breath tests. Mr. Trevino was issued a citation for driving while under the influence of alcohol. RCW 46.61.502.

Mr. Trevino moved to suppress evidence of (1) the deputy's inquiry whether he had anything foreign in his mouth; (2) Mr. Trevino's response to the question; and (3) the deputy's observation of Mr. Trevino's mouth. At the hearing on the motion conducted April 29, 1992, the District Court suppressed the evidence because it was obtained before Mr. Trevino had been notified of his right to counsel. Although the court did not suppress results of the breath test, the State was effectively prevented from entering those results because it could not establish there had been nothing in Mr. Trevino's mouth during the 15 minutes prior to the test.

On review of the District Court's ruling, the Superior Court affirmed, concluding that a suspect's refusal to open his or her mouth for the officer's investigation is, in effect, a refusal to take the breath test. The court also held that a DWI suspect does not need to establish prejudice in order to suppress evidence obtained in violation of CrRLJ 3.1(c)(1).

We granted discretionary review pursuant to RAP 2.3(d)(3).[5]

---

determine the alcoholic content of the breath or blood if the arresting officer has reasonable grounds to believe he or she was driving while intoxicated. Further:

(2) . . . The officer shall inform the person of his or her right to refuse the breath or blood test . . . .. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.

. . . .

(5) If, following his or her arrest and receipt of warnings under subsection (2) of this section, the person arrested refuses upon the request of a law enforcement officer to submit to a test or tests of his or her breath or blood, no test shall be given except as authorized under subsection (3) or (4) [relating to tests of unconscious, dead or incapacitated persons] of this section.

[5]"Discretionary review of a superior court decision entered in a proceeding to review a decision of a court of limited jurisdiction will be accepted only:

". . . .

"(3) If the decision involves an issue of public interest which should be determined by an appellate court". RAP 2.3(d)(3).

RIGHT TO COUNSEL

CrRLJ 3.1(b)(1) provides "[t]he right to a lawyer shall accrue as soon as feasible after the defendant has been arrested . . .". After arrest, the suspect must be advised "as soon as practicable" of the right to a lawyer. CrRLJ 3.1(c)(1). The task force[6] comment to rule 3.1 states that "as soon as practicable" should be interpreted as "immediately" if no problems of interpretation — such as with a deaf person or non-English-speaking person — exist. 4A Lewis H. Orland & Karl B. Tegland, Wash. Prac., *Rules Practice* CrRLJ 3.1 task force comment, at 780 (4th ed. 1990).

The State contends the right to an attorney afforded by CrRLJ 3.1 did not attach before the deputy asked Mr. Trevino if he had anything foreign in his mouth or looked into Mr. Trevino's mouth to check. It argues these actions constitute nontestimonial conduct similar to sobriety field tests, and as such, are exempted from *Miranda* protections.[7] It relies on *Heinemann v. Whitman Cy.*, 105 Wn.2d 796, 718 P.2d 789 (1986) for the proposition that *Miranda* warnings, including the right to a lawyer, are not required before field sobriety tests and other nontestimonial situations. *Heinemann*, at 801.

In *Heinemann*, however, the suspect was not in custody at the time of the field tests and therefore did not yet have the right to counsel required by former JCrR 2.11.[8]

---

[6]The Washington State Bar Association task force that drafted the CrRLJ's submitted the commentary in 1986 when the rules were first proposed for adoption by the Washington State Supreme Court. 4A Lewis H. Orland & Karl B. Tegland, Wash. Prac., *Rules Practice* 780 (4th ed. 1990).

[7]In *Miranda v. Arizona*, 384 U.S. 436, 478-79, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), the United States Supreme Court held that if certain procedures, including advisement of the right to a lawyer, are not followed before police interrogation of a suspect in custody, the testimonial evidence obtained from the suspect cannot be used in trial against him.

[8]Former Justice Court Criminal Rule (JCrR) 2.11 provided that a person must be "immediately" advised of his right to counsel when "taken into custody". The task force that drafted the replacement for this rule in CrRLJ changed "immediately" to "as soon as practicable" (CrRLJ 3.1(c)(1)) and changed "taken into custody" to "has been arrested" in order to provide a clearer standard for police officers and to be consistent with the constitutional requirements of

Noting that former JCrR 2.11(c) goes beyond the requirements to the sixth amendment to the United States Constitution, the *Heinemann* court ruled that the defendant must be advised of his right to counsel immediately after he is taken into custody. *Heinemann*, at 802. In Mr. Trevino's case, as soon as practicable means "immediately" after his arrest in the field. CrRLJ 3.1(c)(1).

The State urges interpretation of the phrase "as soon as practicable" to mean in the most *efficient* time. It argues the reliability of the results of the breath test is best insured by beginning the 15-minute observation period before the possible delay resulting from a suspect conferring with a lawyer. Alternatively, it contends the mouth check at the beginning of the 15-minute observation period is not part of the actual breath test. It asserts the events leading up to the air samples, including the observation period, are not part of the test because they constitute nontestimonial conduct. We disagree on both counts.

█ Following an arrest, the State must inform a defendant of the right to counsel *before administering the breath test. State ex rel. Juckett v. Evergreen Dist. Court*, 100 Wn.2d 824, 831, 675 P.2d 599 (1984) (applying former JCrR 2.11(c)(2)). The test must be performed "according to methods approved by the state toxicologist . . .". RCW 46.61.506(3). Those methods, set out in WAC 448-13-040, include the requirement that the suspect's mouth be checked for foreign objects before a mandatory 15-minute observation period. The mouth check and observation period are therefore integral steps in the BAC Verifier DataMaster test procedure.

Here, refusal to open his mouth would have indicated Mr. Trevino's refusal to take the breath test because the test procedure could not have started until his mouth was checked. WAC 448-13-040. Accordingly, if he had refused to open his mouth, Mr. Trevino could have lost his driver's license for a

*Heinemann*. 4A Lewis H. Orland & Karl B. Tegland, Wash. Prac., *Rules Practice* CrRLJ 3.1 task force comment, at 780 (4th ed. 1990). The JCrR's were amended and retitled CrRLJ effective September 1, 1987.

year and the refusal would have been admissible in criminal proceedings. RCW 46.20.308(2). Mr. Trevino had a right to be advised of his right to a lawyer before the State began administration of the BAC Verifier DataMaster test procedure. *See State v. Schulze,* 116 Wn.2d 154, 164, 804 P.2d 566 (1991).

## PREJUDICE

The State next contends the Superior Court erred in suppressing the mouth examination without a showing of actual prejudice. Relying on *Spokane v. Kruger,* 116 Wn.2d 135, 803 P.2d 305 (1991) and its companion case, *State v. Schulze, supra,* the State asserts prejudice may not be presumed by the infringement of the right of access to counsel. *Kruger,* at 145.

■ A DWI defendant's right to counsel under CrRLJ 3.1 is not absolute, but is limited to a reasonable time and opportunity to contact a lawyer. *State v. Fitzsimmons,* 93 Wn.2d 436, 447-48, 610 P.2d 893, 18 A.L.R.4th 690, *vacated and remanded,* 449 U.S. 977, 66 L. Ed. 2d 240, 101 S. Ct. 390, *aff'd on remand,* 94 Wn.2d 858, 620 P.2d 999 (1980), *overruled on other grounds by Kruger,* at 147; *Seattle v. Koch,* 53 Wn. App. 352, 357, 767 P.2d 143, *review denied,* 112 Wn.2d 1022 (1989). For instance, police are not required to wait for a lawyer to arrive on the scene before beginning routine processing (*Seattle v. Box,* 29 Wn. App. 109, 115-16, 627 P.2d 584 (1981)) and need not delay chemical testing if a lawyer cannot be reached (*State v. Staeheli,* 102 Wn.2d 305, 309-10, 685 P.2d 591 (1984)). The complete failure to advise an arrested DWI suspect of the right to a lawyer before administering the breath test, however, is prohibited by CrRLJ 3.1(c)(1). *Evergreen,* at 831. *Kruger* overruled our Supreme Court's earlier holding in *Fitzsimmons* that violations of the former JCrR 2.11 (now CrRLJ 3.1) right to counsel result in a presumption of prejudice requiring dismissal of DWI charges. *Kruger,* at 145. The State cites the following language to support its contention that prejudice must be proved, not presumed:

It is simply not true that irreparable prejudice must inevitably flow from a denial of counsel. . . . [I]n those cases where prejudice does result from the violation of an accused's right to counsel, suppression of the tainted evidence will protect the rights of the accused to a fair trial.

*Kruger*, at 145.

The issue in *Kruger* was whether *dismissal* of the charges or *suppression* of the evidence obtained after a violation of the right to counsel was the appropriate remedy. The court held that irreparable prejudice requiring *dismissal* could not be presumed but that if prejudice does result from evidence tainted by a violation of the right to counsel, suppression is sufficient to protect an accused's rights. *Kruger*, at 145. "[S]uppression of any evidence acquired after a violation will serve as an effective deterrent to police misconduct." *Kruger*, at 145.

Neither *Kruger* nor its companion case, *Schulze*, limits suppression of tainted evidence to those cases where actual prejudice is shown. Violation of the CrRLJ 3.1(c) right to counsel requires suppression of evidence tainted by the violation.

The decision of the trial court is affirmed.

SCHULTHEIS, J., concurs.

MUNSON, J. (dissenting) — It is inconceivable that, 27 years after the United States Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), law enforcement officers play games with advising arrestees of their *Miranda* rights. But, assuming there is a court error here, I believe the error, if any, was harmless. Nothing was found in Mr. Trevino's mouth; he talked to an attorney; he took the BAC test. The result reached here is overly technical. I would reverse.

Review granted at 125 Wn. 2d 1007 (1994).