FILED
COURT OF APPEALS
DIVISION II

2014 JUL 29 AM 11: 38

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43937-9-II |
| Respondent, | |
| v. | |
| ROMAN MIKHAILOVICH FEDOROV, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Roman Fedorov guilty of attempting to elude a pursuing police vehicle and driving under the influence of intoxicants. Fedorov appeals, arguing that the trial court committed three evidentiary errors: (1) admitting a video containing irrelevant and prejudicial evidence of two pocket knives found during the arrest, (2) refusing to suppress results of a breath-alcohol test due to a police officer's invasion of Fedorov's privacy while conferring with an attorney, and (3) allowing a forensic expert to testify to work performed by another technician in violation of Fedorov's right to confront the witnesses against him. In its response brief, the State assigns error to the trial court's determination that the police officer violated the rule-based right to counsel by not allowing Fedorov to speak in private to his counsel. Because Fedorov's right to counsel was not violated, and because the trial court did not err in admitting evidence and testimony, we affirm.

FACTS

In January 2012, Roman Fedorov and Benjamin Gaidaichuk drove together from Stevens Pass to Tacoma. As they traveled southbound on Interstate 5 near Fife, Trooper Ryan Durbin measured their car's speed at 119 miles per hour.

Trooper Durbin activated his siren and began pursuing the car, which continued at a very high rate of speed. The car switched from the HOV lane on the interstate's left side to the right shoulder, where it continued passing cars in traffic. The car then exited the interstate, traveled the wrong way for a short distance on Pacific Avenue, and finally stopped after reaching a dead-end in a parking lot. When the car stopped, Gaidaichuk immediately exited from the passenger's door and Fedorov emerged relatively slowly from the driver's side. Arriving at this moment, Trooper Durbin arrested both men at gunpoint.

Noting that Fedorov smelled of alcohol, Trooper Durbin transported him to the Fife police department, which was the closest facility with breath-alcohol testing equipment located in a "BAC room." Clerk's Papers (CP) at 114. Fedorov agreed to take a breath test, and Trooper Durbin began the 15-minute observation period. *See* RCW 46.61.506(4)(a). Fedorov then asked to speak with an attorney.

Trooper Durbin called the Department of Assigned Counsel, and Fedorov spoke by phone to attorney Nicholas Andrews with Trooper Durbin present. Andrews twice requested "complete privacy," but Trooper Durbin did not leave the BAC room because he could not observe Fedorov from outside the room. CP at 115. Trooper Durbin later testified that he would walk to the other side of the room when requests for privacy were made, and an arrestee "would have to be speaking pretty loud for me to be able to hear." Verbatim Report of Proceedings

(VRP) at 30. But Fedorov testified he felt that Trooper Durbin could hear his statements to Andrews. The room measured 27 feet by 19 feet.

With Trooper Durbin still present, Fedorov consulted with Andrews. Andrews learned from Fedorov that he did not have a commercial driver's license or any DUI charges within the previous 7 years. Andrews advised Fedorov of his right to refuse a breath test, as well as the administrative and criminal consequences of refusal. Fedorov was "free to ask questions," but because of Trooper Durbin's presence, Andrews felt unable to ask open-ended questions about Fedorov's drinking before the arrest. CP at 115.

After speaking with Andrews for 13 minutes, Fedorov again agreed to take the breath test. Fedorov's breath test results showed an alcohol concentration of .096 and .095.

The State charged Fedorov with two counts: attempting to elude a pursuing police vehicle and driving under the influence of intoxicants. The case proceeded to a jury trial.

Before trial Fedorov moved to suppress the results of the breath test, arguing that the lack of privacy violated his right to counsel. The trial court agreed that Fedorov's right to privately confer with his attorney was invaded, but declined to suppress the evidence because the violation did not prejudice Fedorov. The trial court entered findings of fact and conclusions of law supporting its decision.

During the trial, the trial court admitted a 6-minute video taken from the dashboard camera in Trooper Durbin's car. The video showed Trooper Durbin's pursuit of Fedorov's car, his arrest of Fedorov and Gaidaichuk, and his search of Fedorov incident to the arrest. Fedorov objected to the portion of the video clip after the 3-minute, 50-second mark, consisting of the search incident to the arrest, on the ground that it was irrelevant and greatly prejudicial. Fedorov

claimed that the challenged portion of the video showed Trooper Durbin removing a pocket knife from Fedorov's jacket. But the trial court overruled the objection, accepting the State's argument that the challenged portion showed whether Fedorov was able to follow instructions; thus, any prejudice was outweighed by the probative value of evidence relevant to the issue of Fedorov's intoxication.

While the video was being published to the jury, the State asked Trooper Durbin to explain what the video showed. When the video showed the search incident to Fedorov's arrest, Trooper Durbin testified, "[Fedorov] was pulling away from me. I was going into his pocket, which is where the pocket knives are." 3 VRP at 178. In addition, before the video was published, Trooper Durbin testified that he removed two pocket knives from Fedorov's pocket. Fedorov did not object to any of this testimony.

The State also elicited Trooper Durbin's testimony about his experience performing breath tests. Trooper Durbin testified to the procedures he followed when testing Fedorov's breath sample.

Further, the State elicited expert testimony from Trooper Albert Havenner, a certified breath-alcohol technician. Trooper Havenner was also the custodian of records of quality assurance procedures performed annually "[t]o ensure the [breath-alcohol testing machine] is working accurately and properly." 4 VRP at 310.

Trooper Havenner testified that, according to calibration records, the particular machine used to test Fedorov's breath had performed satisfactorily during a quality assurance procedure in September 2011. But Trooper Havenner did not personally put the machine through the quality assurance procedure; that was done by Trooper Denny Stumph. The State did not call

Trooper Stumph to testify at Fedorov's trial because the Washington State Patrol had transferred him to King County.

Trooper Havenner further testified that, according to maintenance records, Trooper Stumph had replaced the machine's simulator solution in November 2011 with a solution prepared by the State toxicologist. Trooper Havenner opined that, assuming the records of the quality assurance procedure and simulator solution replacement were true, the machine that tested Fedorov's breath would have yielded "accurate and reliable" results. 4 VRP at 320.

Fedorov objected to Trooper Havenner's testimony, asserting that it violated the confrontation clause[1] because he was not the person who performed the maintenance on the machine that tested Fedorov's breath. The trial court overruled the objection.

The jury found Fedorov guilty of both counts. Fedorov appeals.

## ANALYSIS

### I. EVIDENTIARY ERROR

Fedorov first argues that his convictions should be vacated because the trial court erroneously admitted a portion of the video showing that Fedorov possessed two pocket knives. We disagree.

We review evidentiary rulings for an abuse of discretion. *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Darden*, 145 Wn.2d at 619. A trial court necessarily abuses its discretion when basing its ruling on an error of law. *State v. Quismundo*, 164 Wn.2d 499, 504, 192 P.3d 342 (2008).

---

[1] U.S. CONST. amend. VI.

Fedorov argues that the challenged portion of the video was irrelevant, unfairly prejudicial, and improper propensity evidence. *See* ER 402, 403, 404. Fedorov appears to base his argument solely on his assertion that the video showed the removal of two pocket knives from his pocket.

But contrary to Fedorov's assertion, the video merely shows that at two different times Trooper Durbin removed objects from Fedorov's pockets and placed them on top of Fedorov's car. From the video alone, it is impossible to identify these objects as pocket knives. For that reason, Fedorov fails to show that the trial court abused its discretion by admitting the entire six-minute video. *See Darden*, 145 Wn.2d at 619.

To the extent that Fedorov means to challenge Trooper Durbin's identification of the objects as pocket knives, Fedorov waived this challenge by failing to object to Trooper Durbin's testimony. *See* ER 103(a); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Fedorov's first argument fails.

## II. RULE-BASED RIGHT TO COUNSEL

Fedorov next argues that the trial court erred by failing to suppress the results of his breath test after finding a violation of his rule-based right to speak in private with counsel. The State disputes this argument and also, as a threshold issue, assigns error to the trial court's determination that Fedorov's right to counsel was violated. We agree with the State that Fedorov's right to counsel was not violated. Thus, we affirm on different grounds the trial court's denial of Fedorov's motion to suppress.

6

As a threshold issue, the State argues that the trial court erroneously determined that Trooper Durbin violated Fedorov's right to counsel by invading his privacy during the phone call.[2] We agree.

We review findings of fact and conclusions of law not as they are labeled, but for what they truly are. *State v. Luther*, 157 Wn.2d 63, 78, 134 P.3d 205 (2006). The State has assigned error to the trial court's "finding[] as to disputed facts" that Trooper Durbin afforded insufficient privacy to Fedorov during his phone call with Andrews. CP at 117. But the State clearly challenges only the embedded conclusion of law that Fedorov's privacy was invaded. Thus, we review de novo the trial court's legal conclusion that Federov's privacy was invaded. *See State v. Smith*, 154 Wn. App. 695, 699, 226 P.3d 195 (2010). Because neither party challenges the remaining findings of fact, they are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

Under CrR 3.1(b)(1), a defendant's right to counsel attaches "as soon as feasible after the defendant is taken into custody."[3] When a defendant in custody seeks legal advice, he must have an opportunity to call appointed counsel. *State v. Fitzsimmons*, 93 Wn.2d 436, 441, 610 P.2d 893, *vacated*, 101 S. Ct. 390, *and reaffirmed without amendments*, 94 Wn.2d 858 (1980), *overruled on other grounds by City of Spokane v. Kruger*, 116 Wn.2d 135, 147, 803 P.2d 305

---

[2] The trial court concluded that "there was insufficient privacy afforded to [Fedorov] during his phone call with Mr. Andrews," without identifying a more specific privacy right. CP at 117.

[3] The language of CrR 3.1(b)(1) is equivalent to that of CrRLJ 3.1(b)(1). These rule-based rights to counsel attach before the defendant has a Sixth Amendment right to counsel. *See City of Spokane v. Kruger*, 116 Wn.2d 135, 139 n.6, 803 P.2d 305 (1991) (considering equivalent language in former JCrR 2.11(b)(1) (rescinded)).

(1991). But the rule-based right to counsel at this stage is limited. *City of Seattle v. Koch*, 53 Wn. App. 352, 357, 767 P.2d 143 (1989) (citing *Fitzsimmons*, 93 Wn.2d at 448).[4]

Often the rule-based right to counsel is fulfilled by telephone consultation alone. *Koch*, 53 Wn. App. at 357. When a police officer is present in a room while a defendant speaks with counsel by telephone, the defendant's rule-based right to counsel is not necessarily violated. *See Koch*, 53 Wn. App. at 353-55, 357-58. Instead, whether the rule-based right to counsel was violated depends on the facts and circumstances of each case. *City of Bellevue v. Ohlson*, 60 Wn. App. 485, 489, 803 P.2d 1346 (1991).

Here, the trial court's findings of fact establish that Fedorov's right to counsel was not violated. The trial court found that (1) Andrews twice requested "complete privacy" on Fedorov's behalf, although Trooper Durbin could not recall the requests; (2) Trooper Durbin testified that if a request for privacy were made, he would have gone to the other side of the BAC room; and (3) Trooper Durbin testified that he could not have heard Fedorov's conversation from the other side of the BAC room. Given the trial court's additional finding that Trooper Durbin was credible, we accept as a verity Trooper Durbin's testimony that he did not hear Fedorov's

---

[4] Citing *State v. Cory*, 62 Wn.2d 371, 382 P.2d 1019 (1963), and *State v. Garza*, 99 Wn. App. 291, 994 P.2d 868 (2000), Fedorov asserts that the right to counsel entails the right to confer with counsel in private. But both of these cases considered a defendant's *constitutional* right to counsel. *Cory*, 62 Wn.2d at 373; *Garza*, 99 Wn. App. at 296. In contrast, the present case involves only the rule-based right to counsel under CrR 3.1(b)(1), and we recognize that this rule-based right to counsel is "limited." *Koch*, 53 Wn. App. at 357. For example, the rule-based right to counsel does not include the right to have an attorney present when a breath test occurs, and it does not require that the defendant speak with his attorney of choice. *City of Bellevue v. Ohlson*, 60 Wn. App. 485, 489, 803 P.2d 1346 (1991); *City of Seattle v. Sandholm*, 65 Wn. App. 747, 751, 829 P.2d 1133 (1992).

conversation with counsel. Because Trooper Durbin did not hear Fedorov's conversation, we hold that he did not violate Fedorov's right to counsel.

Because Fedorov's right to counsel was not violated, we do not reach Fedorov's argument that he was prejudiced by the violation. The trial court did not err by denying Fedorov's motion to suppress his breath test results.

### III. CONFRONTATION CLAUSE

Lastly, Fedorov argues that his right to confront the witnesses against him was violated by the absence of any testimony from Trooper Stumph, who maintained the machine that was eventually used to measure the alcohol in Fedorov's breath. We disagree because Trooper Stumph's maintenance records were not testimonial statements.

A.      *Confrontation Right*

A criminal defendant has a constitutional right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. Therefore in a criminal trial, the State cannot introduce a testimonial statement from a nontestifying witness unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In considering whether the confrontation clause was violated, our review is de novo. *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012).

The confrontation clause applies only to witnesses who make testimonial statements. *Crawford*, 541 U.S. at 68. A typical testimonial statement is a solemn declaration intended to establish some fact. *Crawford*, 541 U.S. at 51.

Further, a statement is testimonial when its primary purpose is to establish facts relevant to a criminal prosecution. *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). But a statement is not testimonial when its primary purpose is to enable police to respond to an emergency. *Davis*, 547 U.S. at 822.

A statement's primary purpose depends on an objective evaluation of the circumstances in which it is made. *Davis*, 547 U.S. at 822. Thus, a forensic analyst's affidavit that a substance tested positive as cocaine is plainly a testimonial statement when the circumstances show it was made to establish that fact at trial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

Likewise, a technician's unsworn report on the results of a blood-alcohol analysis is a testimonial statement when prepared to establish a defendant's intoxication at trial. *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705, 2710-11, 2717, 180 L. Ed. 2d 610 (2011). In *Bullcoming*, the Court emphasized that questioning of the State's "surrogate" witness—another technician who testified to the practices at the laboratory where the testing took place—could not have exposed lapses or lies on the part of the technician who actually performed the analysis at issue. *Bullcoming*, 131 S. Ct. at 2715-16.

Contending that the confrontation clause was violated, Fedorov argues that Trooper Havenner acted as a surrogate for Trooper Stumph, who was a witness against Fedorov because his calibration report and simulator solution record were testimonial statements. We disagree.

Trooper Stumph's calibration report and simulator solution record were not testimonial statements. They were not made to establish facts at Fedorov's trial. Instead, the calibration report served as a record that the machine correctly computed figures and printed them out during annual quality assurance procedures performed in September 2011. This testing occurred months before the night in January 2012 when Fedorov was arrested. Likewise, the simulator solution record showed that the simulator solution used in this machine had been replaced in November 2011. The objective circumstances show the calibration report and simulator solution record were not originally made to establish facts at Fedorov's trial.

This conclusion is further supported by the rule recently announced by our Supreme Court to resolve confrontation clause challenges to expert witness testimony relying on statements made by a declarant. *State v. Lui*, 179 Wn.2d 457, 315 P.3d 493, *cert. denied*, No. 13-9561 (2014).[5] "If the declarant makes a factual statement to the tribunal, then he or she is a witness. If the witness's statements help to identify or inculpate the defendant, then the witness is a 'witness against' the defendant." *Lui*, 179 Wn.2d at 482. Here, Trooper Stumph was not a witness against Fedorov because his records did not identify or inculpate Fedorov. *See Lui*, 179 Wn.2d at 486. Because Fedorov's confrontation right was not violated, this argument fails.[6]

---

[5] Our Supreme Court decided *Lui* after the parties briefed this case. Fedorov relies on Division One's decision, which the Supreme Court affirmed. *See Lui*, 179 Wn.2d at 463.

[6] Because we find no error, we do not apply the constitutional harmless error standard. *See Lui*, 179 Wn.2d at 495. But we note that RCW 46.61.506(4)(a) provides that breath test evidence "shall be admissible" when the State meets eight foundational requirements, none of which were established by Trooper Stumph's records.

No. 43937-9-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Melnick, J.

12